# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

***

FIRST AMERICAN TITLE INSURANCE COMPANY,

                    Plaintiff,

vs.

COMMERCE ASSOCIATES, LLC; *et.al.*,

                    Defendants.

Case No. 2:15–cv–832–RFB–VCF

**<u>ORDER</u>**

Before the court are the Defendants' motion for protective order (ECF No. 78), First American's response (ECF No. 84), and the Defendants' reply (ECF No. 87).  For the reasons stated below, the Defendant's motion is granted.

## I. Legal Standard

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  FED. R. CIV. P. 45(d)(3)(A).

"[A] party lacks standing under Fed. R. Civ. P. 45[(d)(3)(A)] to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, Case No. 2:04-cv-1199-DAE-GWF, 2007 WL 119148 at* 4 (D. Nev. Jan. 9, 2007); *but see In re Rhodes Companies, LLC*, 475 B.R. 733, 740 (D. Nev. Apr. 30, 2012) (declining to adopt the 'personal right or privilege" standing rule for motion to quash subpoenas).  "A party's objection that the subpoena issued to the non-party

seeks irrelevant information or imposes an undue burden on the non-party are not grounds on which a party has standing to move to quash a subpoenas issued to a non-party, especially where the non-party, itself, has not objected." *G.K. Las Vegas Ltd. Partnership*, 2007 WL 119148 at* 4.

"A party can, however, move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issues to non-parties which seek irrelevant information." *Id.*

"A party or any other person from whom discovery is sought may move for a protective order in the court where the action is pending." FED. R. CIV. P. 26(c)(1).  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." FED. R. CIV. P. 26(b)(1).

## II. Discussion

1.      First American's Subpoena to Everbank Exceeds the Scope of Discovery

"It is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)." *Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund*, No. 2:10-cv-1385-JCM-PAL, 2011 WL 4573349 at *5 (D. Nev. Sept. 29, 2011).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

First American's subpoena to Everbank consists of 6 separate requests for documents related to a 2008 real estate transaction in Florida.  (ECF No. 78 at 5)  In 2008, 1200 Penthouse, LLC purchased a property in Florida.  To finance the purchase, Penthouse borrowed $9.45 million from Everbank's predecessor.  Defendant Gonzales personally guaranteed this loan.  In 2011, Everbank initiated foreclosure proceedings and sued Gonzalez for breach of his personal guarantee.  (ECF No. 84-7)  The parties reached a settlement agreement.  In exchange for releasing all claims against Penthouse and Gonzalez, Everbank would be paid $5.5 million.  The property was sold to Future Key, LLC for exactly $5.5 million plus closing costs.

First American alleges that Defendant Gonzales was the sole member of both Penthouse and Future Key.  (ECF No. 84)  He fabricated an "arm's length" transaction in order to retain the Florida property while only paying Everbank a portion of the property's purchase price.  (*Id.*)  Gonzales allegedly received the $5.5 million from Defendant Commerce Associates, LLC, another entity where Gonzales is allegedly the sole member.  (*Id.*)  First American contends that Gonzales alleged abuse of the corporate fiction in Florida is relevant to its theory that Gonzalez is subject to alter-ego liability for any judgment obtained against Defendants Commerce Associates and TG Investments.

First American argues that the subpoena on Everbank is relevant to the third element of its alter-ego liability claim: "[a]dherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice."  (*Id.* at 8)(quoting N.R.S. 78.747(2)(c)).  The Defendants argue that documents related to Penthouse's purchase of the Florida property and the subsequent lawsuit are not relevant to the alter-ego theory of liability.  This court agrees.

In order to establish a claim for alter ego liability, First American must show: "(1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be

such that adherence to the corporate fictions of a separate entity would, under the circumstances, sanctions fraud of promote injustice." *Polaris Indus. Corp. v. Kaplan*, 747 P. 2d 884, 887 (Nev. 1987). First American argues that Gonzales alleged fraud in Florida supports a finding that he was the alter ego of Commerce and TG Investments.  (ECF No. 84).

While it is relevant that Gonzales shifted money between LLCs he wholly controlled, the relevancy ends once the transfer has taken place.  How the companies spent the money, or any related litigation, is irrelevant.  Based on other discovery, First American learned that Commerce transferred money into an escrow account to purchase a property owned by Penthouse.  From this information, First American speculates that Gonzales orchestrated a fraud involving other non-defendant LLCs which he wholly owns.  Information about the interactions between non-defendant LLCs and Gonzales is relevant to the issue of whether Gonzales was the alter ego of Commerce and TG Investments.  Information about what a non-defendant LLC did with the allegedly ill-gotten gains is irrelevant to First American's theory.

Even if such information were relevant, it is not proportional to the needs of this action.  By way of a subpoena issued to the Florida escrow company, Capstone Title Partners, First American learned about the Florida real estate transaction.  During his deposition, Gonzales was unable to provide an innocuous explanation for the transaction.  Based on these representation, First American has sufficient information on the Florida real estate transaction for the purposes of this case.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that the Defendants' motion for a protective order (ECF No. 78) is GRANTED.  Everbank is not required to respond to First American's subpoena for documents.

/// /// ///

1

2

IT IS FURTHER ORDERED that on or before January 10, 2017, the Defendants will provide Everbank with a copy of this order.

3

IT IS SO ORDERED.

4

DATED this 3rd day of January, 2017.

5

6

7

_____

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25